AO 91 (Rev. 11/11) Criminal Complaint

**U.S. DISTRICT COURT - N.D. OF N.Y.**
# FILED

MAY 1 1 2026

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Plattsburgh

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| v. | ) |
| **Bridget Mary DORAN,** | )   Case No.   8:26-PO-45 (GLF) |
| | ) |
| | ) |
| | ) |
| | ) |
| **Defendants.** | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of May 8, 2026 in the county of Clinton in the Northern District of New York the defendants violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1325(a)(1) | Entry Without Inspection. |

This criminal complaint is based on these facts:
See attached affidavit.

☒   Continued on the attached sheet.

_____   5/10/2026 1:28 PM
*Complainant's signature*

U.S. Border Patrol Agent Andrew L. Kraengel
*Printed name and title*

Attested to by the Affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:   MAY 11, 2026

_____
*Judge's signature*

City and State:   Plattsburgh, New York

Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

*United States of America v* **Bridget Mary DORAN**

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Andrew L. Kraengel, hereby depose and state under penalty of perjury:

1.      I am a Border Patrol Agent (BPA) with the United States Department of Homeland Security (DHS), Bureau of Customs and Border Protection (CBP), United States Border Patrol (USBP) assigned to the Burke Border Patrol Station. I have been a law enforcement officer for CBP since 2011 beginning with the U.S. Border Patrol as an Agent assigned to Ajo Station in Arizona.  In 2014, without a break in service I became a Customs and Border Protection Officer, assigned to the Buffalo, NY Port of Entry and later to the Massena, NY Port of Entry.  Without a break in service, in 2024, I reinstated with the U.S. Border Patrol.

2.      My primary duty is to assist in the prevention of illicit trafficking of people and contraband between the official ports of entry. My authority to perform this mission is articulated in the Immigration and Nationality Act, sections 235 and 287, and Title 8 U.S.C. Section 1357. These bodies of law relate to, among other things, a Border Patrol Agent's authority to interrogate any alien or person believed to be an alien, and to make an arrest of any alien who is entering or attempting to enter the United States in violation of the immigration laws. To enforce these laws, I have received training at the Federal Law Enforcement Training Centers in Artesia, New Mexico & Glynco, Georgia in Law, Operations, Firearms, Driving Techniques, and Physical Techniques.

3.      This affidavit is based in part on information provided to me by others and from law enforcement and immigration databases.  It does not set forth all of my knowledge about the investigation.

4.      I submit this affidavit in support of a criminal complaint charging defendant Bridget Mary DORAN with violating 8 U.S.C. § 1325(a)(1), which prohibits any alien, that is, any person who is not a citizen or national of the United States, from entering or attempting to enter the United States "at any time and place other than as designated by immigration officers."

*United States of America v* **Bridget Mary DORAN**

## PROBABLE CAUSE

5.      On May 7, 2026, at approximately 11:10 PM, Border Patrol Agents assigned to the Burke Border Patrol Station detected a silver SUV on Frontier Rd in Churubusco, NY while monitoring electronic surveillance equipment at the Burke Border Patrol Station. This area of Churubusco is a rural community that parallels the US/Canada International Border and Agents are familiar with most of the residents in the community and the vehicles they operate. This silver SUV was unfamiliar to the agent monitoring from the Burke Station and alerted Agents in the Churubusco community. The SUV travelled west on Frontier Rd and then continued onto Earlville Rd in Chateaugay, NY. The SUV then turned west onto McCormick Rd and then turned south onto CR-52.

6.      An Agent positioned at the intersection of NY SR-11 was able to identify that the silver SUV, was a Toyota Highlander bearing MD license plates 4DF5915. This raised more suspicion due to the late hour, the vehicle being out of state, and traveling along an indirect route that parallels the border. The agent executed a vehicle stop as the vehicle entered the Mountain Mart Gas Station in Chateaugay, NY, which was, at the time, closed for the day. The Agent approached the Highlander and identified himself as a Border Patrol Agent. The Agent then asked the driver, later identified as F.M.K.B., where he was coming from and F.M.K.B. said Maryland. The Agent then asked what he was doing in the area and he claimed to be there to see a friend. The Agent suspected F.M.K.B. of being involved in cross-border smuggling activity and advised F.M.K.B. that he should leave the area to which F.M.K.B. agreed.

7.      After the Agent terminated the vehicle stop, the Agent proceeded westbound on NY SR-11. The Highlander however, instead of heading back towards Maryland, proceeded eastbound on NY SR-11 and then turned back north onto CR-52, going back to the area along the border. Agents, watched as F.M.K.B. then turned east onto McCormick Rd, then east onto Earlville Rd and finally continued east onto Frontier Rd. The agent monitoring electronic surveillance at the Burke Station advised the Agents in the Chateaugay and Churubusco areas that the Highlander had not been detected leaving the area and was likely stopped somewhere on Frontier Rd. Agents then positioned themselves along the most likely points of egress from the border area.

*United States of America v* **Bridget Mary DORAN**

8.     This area of Churubusco is frequently utilized for cross-border smuggling activity due to the proximity to the US/Canada International Border and multiple points of egress. One area of Frontier Rd, close to the last known location of the Highlander, is only roughly twenty-five yards from the border.

9.     After waiting in the area for close to two hours, the Highlander was still nowhere to be seen and was not detected on any surveillance equipment. The Agent that had stopped F.M.K.B. earlier in the night decided to proceed west on Frontier Rd from NY SR-189. As the Agent passed the last known location of the Highlander, the Agent noticed there was a vehicle parked in a local resident's driveway with its running lights on.

10.     Approximately five minutes later, around 1:35AM two individuals were detected via electronic surveillance equipment travelling south across US/Canada International Border.  Around the same time, Royal Canadian Mounted Police notified Agents, via (C-100) dispatch, that they observed a man and woman traveling south bound from Canada to the U.S. in the area of Frontier Rd. Roughly two minutes after that, a vehicle was detected in that area pulled to the side of the road. The vehicle was then detected heading westbound on Frontier Rd towards Lost Nations Rd. The vehicle then passed an Agent positioned on Lost Nations Rd and he could clearly identify that it was the same Highlander. The Agent pulled out behind the Highlander after it passed and notified Agents to the east that the Highlander was headed their way as it turned east onto NY SR-11. An agent positioned at the intersection of Looby Rd and NY SR-11 pulled out behind the Highlander as it passed. The agent then activated her emergency lights and sirens and executed a vehicle stop in front of Charlie's Country Kitchen restaurant.

11.     Agents approached the vehicle and identified themselves, again. Agents could see that there was now a male front seat passenger, who Agents later identified as T.C. and a female passenger in the back seat, who Agents later identified as Bridget Mary DORAN.  Agents asked the driver, F.M.K.B., who the individuals were in the Highlander and he claimed to have been paid $800 to come from Maryland and pick the individuals up at an address that was later shown to be the address where the vehicle was parked in the driveway with its running lights on. Agents asked F.M.K.B. to state his citizenship and he claimed to be a US Citizen. Agents then asked

*United States of America v* **Bridget Mary DORAN**

the passengers to state their citizenship, to which both replied, Ireland. Agents then asked both passengers if they had illegally crossed the border shortly before they were stopped and both claimed that they had. At this time, all occupants from the Highlander were placed under arrest and transported to the Burke Border Patrol Station for further interviews and processing.

12.     At the station, Agents confirmed that both passengers were Irish citizens illegally present in the United States and the Toyota Highlander was registered to the driver.

13.     It was determined that Bridget Mary DORAN is a citizen and national of Ireland and record checks confirmed Ireland as the subject's country of birth. DORAN has no legal right to be in the U.S.  Her previous legal entry into the U.S. was on 04/10/2021 and she did not depart the U.S. until 1703 days after her admission expired.

14.     Nationals and Citizens of Ireland are required to apply for a visa or to seek entry under the Visa Waiver Program if they seek to enter the United States. Irish citizens who are issued a visa by the United States government are required to present the visa and the person's passport to an immigration official at a Port of Entry as he or she seeks admission into the United States.  If an Irish citizen seeks admission into the United States under the Visa Waiver Program they have to obtain approval through the Electronic System for Travel Authorization (ESTA), first, and, if approved through ESTA, would still need to present themselves with a passport to an immigration official at a Port of Entry as he or she seeks admission into the United States. Bridget Mary DORAN does not possess a valid visa and she would not have been allowed to be approved for ESTA due to her previous overstay of her admission in the U.S. If DORAN had presented herself at a Port of Entry and asked permission to enter the United States, she would have been denied admission as she does not possess a valid United States visa and would not have been eligible for entry under the Visa Waiver Program.

15.     During the interview at the station DORAN was read her Miranda rights and agreed to talk to Agents. During the interview she claimed to have knowingly illegally entered the United States.

*United States of America v* **Bridget Mary DORAN**

## Conclusion

16.    Based on the foregoing, I respectfully request the Court issue the proposed complaint charging the

defendants with improper entry by an alien, in violation of 8 U.S.C. § 1325(a)(1).

_Andrew Kraengel_    5/10/2026 1:31 PM
Andrew L. Kraengel
United States Border Patrol

Attested to by the affiant in accordance with Rule 4.1
of the Federal Rules of Criminal Procedure.

Date:  _MAY 11, 2025_

Hon. Gary L. Favro
United States Magistrate Judge